AMERICAN CHIROPRACTIC
ASSOCIATION, INC.,
Plaintiff,

v.

Donna E. SHALALA, Secretary of
Health and Human Services,
Defendant.

No. CIV.A. 98–2762 SSH.

United States District Court,
District of Columbia.

July 7, 2000.

Robert K. Richardson, Odin, Feldman & Pittleman, Fairfax, VA, for Plaintiff.

Marcus Christ, HHS, Office of General Counsel, Health and Financing Division, Baltimore, MD, for Defendant.

## OPINION AND ORDER

STANLEY S. HARRIS, District Judge.

Before the Court are defendant's motion to dismiss, plaintiff's opposition, defendant's reply thereto, and various filings related to the briefing of the motion to dismiss.[1] Upon consideration of these submissions and plaintiff's amended complaint, the Court grants defendant's motion with respect to Count I, and directs the parties to submit supplemental memoranda with respect to the administrative adjudication of the claims alleged in Counts II–V. Although findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56, see Fed.R.Civ.P. 52(a); *Summers v. Department of Justice*, 140 F.3d 1077, 1079–80 (D.C.Cir.1998), the Court nonetheless sets forth its reasoning.

---

1. These filings include plaintiff's Motion To File a Three Page Supplement, defendant's Notice of Supplemental Authority, and defendant's Motion To Strike Plaintiff's Response to Defendant's Notice of Supplemental Authority. The Court grants plaintiff's motion to file a supplement because the supplement provides information bearing on a representation made by defendant in her motion to dismiss. For the reasons set forth in *supra* note 7, the Court denies defendant's motion to strike.

## I. BACKGROUND

Plaintiff American Chiropractic Association ("ACA") brings this action against the Secretary of Health and Human Services (the "Secretary") on behalf of chiropractors who are members of its organization. Plaintiff alleges that certain chiropractic services are not being provided or made available to Medicare beneficiaries to the extent required by statute.

### A. *Overview of the Medicare Program*

Established in 1965 under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, the Medicare program provides government-subsidized health insurance for elderly and disabled individuals. Part A of title XVIII provides basic coverage for certain hospital and hospital-related services, home health services, and hospice care. *See* 42 U.S.C. § 1395c. Part B of title XVIII provides supplemental insurance coverage, and is financed jointly by contributions from the federal government and voluntary premium payments from enrollees. *See id.* §§ 1395j, 1395k. Under Parts A and B, Medicare pays for covered services on a "fee-for-service" basis.

In addition to the fee-for-service system under Parts A and B, Congress established a managed care system involving health maintenance organizations ("HMOs") and competitive medical plans ("CMPs") in 1982. *See id.* § 1395mm. Under this system, Medicare beneficiaries can receive their benefits through HMOs or organizations meeting certain criteria enumerated in 42 U.S.C. § 1395mm(b)(2). Eligible organizations are required to provide coverage for all services covered under Parts A and B. *See id.* § 1395mm(c)(2)(A). Medicare pays the participating organizations a monthly, predetermined amount for each enrollee, regardless of whether the enrollee receives services, pursuant to "risk contracts" entered into between the Secretary and the organization. *See id.* § 1395mm(g)(3).

The HMO/CMP program is gradually being phased out in favor of the "Medicare + Choice" ("M + C") program. *See id.* § 1395mm(k)(1). In 1997, Congress established the M + C program as a new "Part C" to title XVIII. *See id.* §§ 1395w–21—1395w–28. In order to be eligible for Part C coverage, an individual must be entitled to benefits under Part A and enrolled under Part B. *See id.* § 1395w–21(a)(3). Eligible individuals can elect to receive benefits under an M + C plan from an M + C organization as an alternative to coverage under Parts A and B. *See id.* § 1395w–21(a)(1). An M + C plan may be any of the following: a "coordinated care plan" which provides services through a defined network of providers, as in the case of a health maintenance organization ("HMO"); a "medical savings plan" under which M + C organizations provide deductible insurance coverage and funds are deposited in a "Medical Savings Account"; and a "private fee-for-service plan" operated by an M + C organization, under which enrollees may receive services from providers willing to accept the organization's payment rates, and payments are made on a fee-for-service basis. *Id.* § 1395w–21(a)(2). Under all of these M + C plans, Medicare pays a fixed amount to the organization on behalf of the enrollee, regardless of whether the enrollee receives services. *See id.* § 1395w–23. M + C organizations are required to provide coverage for all benefits covered under Parts A and B. *See id.* § 1395w–22(a).

### B. *Medicare Coverage for Chiropractic Services*

Part B provides coverage for, *inter alia*, "physician services." *Id.* § 1395k(a)(2)(B)(i). When Medicare was originally established, "physician services" did not include services provided by a chiropractor. However, in 1972, Congress amended the definition of "physician" to include chiropractors for certain limited services. As a result of this amendment, a physician authorized to provide a covered physician service now includes:

a chiropractor who is licensed as such by the State (or in a State which does not license chiropractors as such, is legally authorized to perform the services of a chiropractor in the jurisdiction in which he performs such services), and who meets uniform minimum standards promulgated by the Secretary, but only for the purpose of subsections (s)(1) and (s)(2)(A) of this section and *only with respect to treatment by means of manual manipulation of the spine (to correct a subluxation)* which he is legally authorized to perform by the State or jurisdiction in which such treatment is provided.

*Id.* § 1395x(r)(5)(emphasis added). Thus, Medicare provides coverage for manual manipulations of the spine to correct a subluxation (hereinafter "manual manipulations") performed by chiropractors. As discussed below, the parties disagree over the scope of this coverage. Plaintiff argues that Medicare covers only those manual manipulations performed by chiropractors, while defendant argues that it covers manual manipulations performed by chiropractors, as well as by other qualified practitioners meeting the definition of a physician for the purpose of rendering "physician services," such as doctors of medicine or osteopathy. *See id.* § 1395x(r)(1).

In § 4204(f) of the Omnibus Budget Reconciliation Act of 1990 ("OBRA"), Congress required the Secretary to "conduct a study of the extent to which health maintenance organizations with contracts under [42 U.S.C. § 1395mm] make available to enrollees entitled to benefits under title XVIII of [the Social Security] Act chiropractic services that are covered under such title." Pub.L. No. 101–508, § 4204(f), 104 Stat. 1388, 112 (1990), *as amended by* Pub.L. No. 103–432, § 157, 108 Stat. 4398, 4442 (1994). The study was to "examine the arrangements under which such services are made available and the types of practitioners furnishing such services to such enrollees." *Id.* Section 4204(f) re-

quired the Secretary to issue a report on the study to Congress by January 1, 1993, and to include in that report "recommendations with respect to any legislative and regulatory changes that the Secretary determines are necessary to ensure access to such services." *Id.*

The Secretary did not submit the report required by § 4204(f) (the "Report") until April 12, 1999. *See* Amended Compl., Ex. Y. Her submission appears to have been prompted by the initiation of this litigation; plaintiff filed its original complaint on November 12, 1998, seeking to compel the Secretary to submit the Report. Based on the results of a survey conducted in 1991, the Report states that "78 percent of HMOs utilized chiropractors to provide the service of manual manipulation of the spine. None of the plans that utilized chiropractors included them on the staff, group, or panel.... The majority of the plans in this group also use other practitioners to provide this service." *Id.*, Chapter 4. All of the HMOs that did not utilize chiropractors to provide the service of manual manipulations utilized "physiatrists (physicians who specialize in muscular-skeletal disorders), orthopedists, and physical therapists" to provide this service. *Id.* The Report states that enrollees in managed care organizations must obtain a referral from their primary physician before they may see a practitioner for a manual manipulation. *Id.*, Chapters 2 and 3. The Report declined to "recommend[ ] legislative or regulatory changes to ensure access for M + C organization enrollees to Medicare-covered chiropractic services at this time," noting, among other reasons, that all "surveyed Medicare-contracting plans provided the service of manual manipulation," and that the "statute ... is clear that doctors of medicine and doctors of osteopathy are qualified to provide the service of manual manipulation of the spine to correct a subluxation." *Id.*, Chapter 5. The Report goes on to state that "a statutory change would be required to define Medicare coverage of manual manipulation of the spine to correct a subluxation as a

service that must only be provided by chiropractors." *Id.*

### C. *Plaintiff's Amended Complaint*

Plaintiff filed an amended complaint shortly after the Secretary submitted the Report. Plaintiff alleges that, as a result of the Secretary's regulations and policies, Medicare beneficiaries enrolled in HMO/CMP programs have been wrongfully denied access to the service of manual·manipulations by chiropractors, and "that the trend for future M + C managed care programs will be no different." Compl. ¶ 49. Plaintiff attributes the Secretary's allegedly unlawful regulations and polices to an anti-chiropractic bias which, it claims, has historically existed within the medical profession and the Department of Health and Human Services ("HHS"). *Id.* ¶ 4.

Plaintiff invokes the Court's general federal question jurisdiction, 28 U.S.C. § 1331, as well as its jurisdiction under the Mandamus and Venue Act (the "Mandamus Act"), 28 U.S.C. § 1361, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702–706, and the Medicare Act, 42 U.S.C. § 1395 *et seq.* Plaintiff's amended complaint asserts five claims. Count I alleges that the Secretary violated OBRA § 4204(f) by failing to include in her Report recommendations for legislative and regulatory changes to ensure access to chiropractic services, as well as information on the extent to which Medicare HMO/CMP organizations make those services available to enrollees; plaintiff seeks to compel the Secretary to submit a supplemental report to Congress containing the missing recommendations and information. *Id.* ¶¶ 51–56. Counts II and III allege that the Secretary's policies and regulations unlawfully allow Medicare HMO/CMP and M + C organizations (collectively "managed care organizations") to

substitute manual manipulations performed by a chiropractor as a covered Medicare service with those performed by non-chiropractors, and seek to compel the Secretary to issue regulations requiring those organizations to offer manual manipulations only through a chiropractor.[2] *See id.* ¶¶ 57–78. Count IV alleges that managed care organizations should not be allowed to require a referral by a non-chiropractor before a beneficiary may receive a manual manipulation from a chiropractor, and seeks to compel the Secretary to issue regulations prohibiting such referral requirements. *See id.* at ¶ 79–91. Finally, Count V alleges that the monthly, predetermined amounts that Medicare pays to managed care organizations (per enrollee) include payments for manual manipulations, and that these portions "have been misspent, diverted or otherwise misappropriated" insofar as the Health Care Financing Administration ("HCFA"), which is responsible for much of the administration of the Medicare program, has failed to ensure ·that· those organizations properly account for the earmarked portions. *Id.* at ¶ 96. Count V seeks to compel the Secretary to assess the managed care organizations for the amount of the alleged misappropriation, or to withhold that amount from future payments, and to designate the recovered sum "solely for chiropractic service." *Id.* at ¶ 97.

Defendant moves to dismiss plaintiff's amended complaint on three grounds. First, defendant argues that plaintiff lacks standing to raise its claims. Second, defendant argues that the Court lacks jurisdiction to review plaintiff's claims under 28 U.S.C. § 1331 and the APA. Last, defendant argues that plaintiffs are not entitled to mandamus relief.

---

**2.** Count II alleges that a manual manipulation performed "by a physical therapist is not a Medicare covered service and may not be substituted by a Medicare HMO/CMP or M + C organization for manual manipulation … performed by a chiropractor." *Id.* ¶ 62.

Count III alleges that medical doctors ·and osteopaths are not qualified to perform manual manipulations, and are precluded by the laws of a number of states from performing this service. *See id.* ¶¶ 71–72.

**6**

## II. DISCUSSION

### A. *Plaintiff's Standing*

 Plaintiff brings this action on behalf of its members, who are doctors of chiropractic.[3] *See* Compl. ¶ 2. As an association, plaintiff has standing to bring such an action only if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Defendant contests plaintiff's standing only on the ground that plaintiff's members themselves would not have standing to assert the claims in its complaint. In order to establish the "irreducible constitutional minimum of standing," a litigant must have suffered an injury in fact that is "concrete and particularized" and "actual or imminent"; the injury must be "fairly traceable" to the defendant's conduct; and it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Defendant argues that plaintiff's members do not meet the requirements of injury, traceability, and redressability for any of the counts in the amended complaint. The Court agrees only with respect to Count I.

### 1. *Count I*

 As discussed, Count I challenges the content of the Report submitted by the Secretary to Congress pursuant to OBRA § 4204(f). Plaintiff alleges that the Secretary's failure to make recommendations for legislative and regulatory changes in order to ensure access to chiropractic services denies chiropractors of "opportunities" to which they are entitled, such as the right to be the sole provider of manual manipulations under the Medicare program. Assuming, *arguendo*, that this denial of opportunities is a constitutionally cognizable injury traceable to the Secretary, it is not likely to be redressed by the relief plaintiff seeks—the submission of a supplemental report. As the Ninth Circuit stated in a case similarly involving an executive report required to be submitted to Congress, "no legal consequences flow from the report. No matter what it says or how much it says, the report is simply a document submitted to Congress that Congress has no obligation to consider, let alone act upon." *Guerrero v. Clinton*, 157 F.3d 1190, 1194 (9th Cir.1998). Even if the desired recommendations for statutory and regulatory changes would make some members of Congress more likely to take favorable action, any effect of the report "would be political, not legal, in nature. That is not the kind of consequence flowing from the challenged action that will support standing." *Glover River Org. v. Department of the Interior*, 675 F.2d 251, 255 (10th Cir. 1982); *accord Guerrero*, 157 F.3d at 1195. Because the asserted injury suffered by chiropractors is not likely to be redressed by a supplemental report, plaintiff lacks standing to assert Count I.

### 2. *Counts II–V*

 By contrast, plaintiff has standing to assert the remaining claims in its

---

**3.** Plaintiff's complaint suggests that it is also bringing suit on behalf of Medicare beneficiaries. *See, e.g.,* Compl. ¶ 4 ("Plaintiff brings this action to prevent HHS from contravening the will of Congress and denying Medicare patients in HMO/CMPs and M+C plans their rightful claim to chiropractic services delivered by licensed doctors of chiropractic."). However, a "plaintiff may assert the rights of a third party only when there is 'some hindrance to the third party's ability to protect his or her own interests.' " *Goodman v. F.C.C.*, 182 F.3d 987, 992 (D.C.Cir.1999) (quoting *Powers v. Ohio*, 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)); *accord American Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1363–64 (D.C.Cir.2000). Because plaintiff has not alleged that Medicare beneficiaries face any hindrance in protecting their interests, it lacks standing to assert claims on their behalf.

amended complaint. With respect to these claims, plaintiff argues that its members "are suffering economic harm in that Medicare reimbursements are being withheld entirely or misdirected to other unqualified practitioners." Pl.'s Opp'n at 20. Although plaintiff does not clearly make this allegation of injury in its amended complaint, a court must construe a complaint liberally in the plaintiff's favor, and accept as true all material allegations contained therein, on a motion to dismiss for lack of standing. *See Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987). Read in this manner, plaintiff's amended complaint fairly alleges economic injury because it claims that chiropractors "have long suffered from illegal, anti-competitive prejudice at the hands of the medical community," Compl. ¶ 3, that the American Medical Association conspired in the past to prevent Medicare coverage for services performed by chiropractors, *id.* ¶ 12, and that this anti-competitive prejudice persists under the Secretary's policies, *id.* ¶ 4. Because the complaint supports an allegation of economic injury, and because allegations of such harm are sufficient for standing purposes, *see Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), plaintiff alleges a constitutionally cognizable injury.

■ Second, the alleged injuries suffered by ACA members are fairly traceable to the Secretary's conduct. Counts II and III allege that the Secretary's policies unlawfully permit non-chiropractors to perform manual manipulations as a covered "physician service"; thus, by not requiring that chiropractors be the exclusive Medicare providers of manual manipulations, the Secretary allows Medicare reimbursements to be misdirected to allegedly unqualified practitioners.[4] Count IV alleges that the Secretary's policies unlawfully permit a managed care organization to require a referral by a primary care physician before a Medicare patient may receive a manual manipulation from a chiropractor; this conduct contributes to the alleged economic harm suffered by ACA members because plaintiff alleges that medical doctors do not make the requisite referrals when warranted by a patient's condition. Count V alleges that the HCFA has failed to ensure that managed care organizations properly allocate portions of the monthly, predetermined sums they receive from Medicare to coverage of manual manipulations; this alleged dereliction contributes to ACA members' alleged injury by allowing payments earmarked for manual manipulations to be diverted away from chiropractors.

■ Finally, the alleged injuries suffered by ACA members are likely to be redressed by a favorable decision in this case. Plaintiff asks the Court to compel the Secretary to issue regulations requiring Medicare managed care organizations to offer manual manipulations only through chiropractors (Counts II and III), and prohibiting them from requiring a physician referral before a patient may receive this service (Count IV), and to compel the Secretary to assess managed care organizations for misappropriated and wrongfully diverted funds and to hold this sum solely for chiropractic services (Count V). Each form of desired relief would help to remedy the economic injury allegedly caused by the Secretary's current regulations and policies. Thus, the Court concludes that plaintiff has standing to assert Counts II–V.[5]

---

**4.** The Secretary disputes this traceability analysis, arguing that it "hinges upon the unfounded theory that the Medicare statute permits chiropractors to be the exclusive providers of the treatment of manual manipulation of the spine to correct a subluxation." Def.'s Reply at 7. The Secretary's assertion that this theory is unfounded, however, makes a critical assumption about an issue that is central to the resolution of Counts II and III. On a motion to dismiss for want of standing, the Court need not reach so far into the merits to resolve such a question of statutory interpretation, but rather may accept as true the allegations in plaintiff's complaint. *Cf. Haase,* 835 F.2d at 906.

**5.** The Secretary also argues that plaintiff does not satisfy one of the prudential requirements

### B. *Jurisdiction under the Medicare Act, Section 1331, and the APA*

 As noted, plaintiff invokes the Court's jurisdiction under the Medicare Act, § 1331, and the APA.[6] Because the APA does not provide an independent grant of subject matter jurisdiction for federal court review of agency action, the Court has jurisdiction under the APA only insofar as it has jurisdiction under § 1331. *See Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Your Home Visiting Nurse Servs., Inc. v. Shalala,* 525 U.S. 449, 457–58, 119 S.Ct. 930, 142 L.Ed.2d 919 (1999). The Secretary argues that provisions of the Medicare Act limiting federal court review of agency action preclude the Court from exercising jurisdiction under § 1331 in this case. Section 405(g) of the Social Security Act, made applicable to the Medicare Act by 42 U.S.C. § 1395ii, states that "[a]ny individual, after any final decision of the [Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision" in federal district court. Section 405(h) purports to make this avenue for judicial review exclusive:

> No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action

against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

A claim "arises under" the Medicare Act, within the meaning of § 405(h), if "both the standing and substantive basis for the presentation" of the claim is the Medicare Act. *Heckler v. Ringer,* 466 U.S. 602, 615, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (applying standard set forth in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), for claim "arising under" Social Security Act). Applying that standard here, the Secretary argues that the Court lacks § 1331 jurisdiction. Nor may the Court exercise jurisdiction under § 405(g), according to the Secretary, because plaintiff has not presented its claim to the Secretary for adjudication, much less received a "final decision." Plaintiff counters that the Supreme Court's decision in *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), makes the jurisdictional restrictions set forth in §§ 405(g) and (h) inapplicable to claims challenging agency regulations, and limits their applicability to claims challenging benefit amount determinations. Because plaintiff's claims challenge HHS regulations and policies, plaintiff argues that the

---

for standing because the rights it is asserting do not "arguably [fall] within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Def.'s Mem. at 26 n. 15 (quoting *Association of Data Processing Serv. Org., Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)). The Court disagrees. The Supreme Court has stated that:

> In cases where the plaintiff is not itself the subject of the contested regulatory action, the [zone of interests] test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff.

*Clarke v. Securities Indus. Ass'n,* 479 U.S. 388, 399, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987); *accord Federation for Am. Immigration Reform, Inc. v. Reno,* 93 F.3d 897, 900 (D.C.Cir. 1996). In this case, the interests of chiropractors are not so marginally related to or inconsistent with the purposes implicit in the Medicare Act because Congress amended the statute in 1972 to allow chiropractors to provide manual manipulations to patients as a covered service. *See* 42 U.S.C. § 1395x(r)(5). Thus, the interests asserted by plaintiff fall within the zone of interests protected by the Medicare Act.

6. Plaintiff also invokes the Court's jurisdiction under the Mandamus Act. The relationship of the Mandamus Act to the other jurisdictional bases invoked by plaintiff is discussed *infra* in Part II.C.

Court may properly exercise jurisdiction under § 1331. The Secretary disagrees with plaintiff's interpretation of *Michigan Academy.*

After the parties had completed the briefing on the Secretary's motion to dismiss, the Supreme Court issued a decision bearing on the scope of § 405(h), and clarifying its earlier decision in *Michigan Academy.* In *Shalala v. Illinois Council on Long Term Care, Inc.,* 529 U.S. 1, 120 S.Ct. 1084, 1095–97, 146 L.Ed.2d 1 (2000), the Court held that § 405(h)'s bar on federal question jurisdiction, as applied to the Medicare Act by § 1395ii, is not limited to claims involving amount determinations, but rather encompasses claims challenging agency regulations as well. The Court did not read *Michigan Academy* for the broad proposition advanced by plaintiff; rather it read the decision "as holding that § 1395ii does not apply § 405(h) where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Id.* at 1096–97. The Court emphasized that a party could not prevent § 1395ii's incorporation of § 405(h) by simply showing that postpone-

ment of federal court review would create "added inconvenience or cost" in a particular case. *Id.* at 1098. "Rather, the question is whether, as applied generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into complete preclusion of review." *Id.* Further, because the exceptions to the administrative doctrines of ripeness and exhaustion do not apply to § 405(h), *see id.* at 1093, a party may not circumvent § 405(h)'s jurisdictional bar by showing that administrative review of its claim would be futile.

In light of *Illinois Council,* plaintiff's argument that it is not required to pursue its claims administratively before bringing them in federal court faces a significant hurdle; plaintiff must show that requiring administrative adjudication of its claims would lead to "no review at all." The Secretary's motion suggests that plaintiff cannot make this showing, as she points to procedures which allow for administrative review of Medicare claims.[7] As described by the Secretary, Medicare regulations al-

---

**7.** On March 3, 2000, defendant filed a Notice of Supplemental Authority advising the Court of the Supreme Court's decision in *Illinois Council.* On March 16, 2000, plaintiff filed a six-page Response to Defendant's Notice of Supplemental Authority, which contained a lengthy appendix. In that response, plaintiff argues that requiring it to submit its claims to HHS for review would deprive plaintiff of due process of law, because HHS is biased and guilty of "illegal conspirational behavior" against it. Defendant has filed a motion to strike plaintiff's response on the ground that it exceeds the scope of defendant's notice of supplemental authority because it does not discuss any relevant aspects of *Illinois Council.* The Court denies defendant's motion to strike; plaintiff's response falls within the scope of the *Illinois Council* decision because plaintiff argues that the alleged deprivation of due process it would suffer from having to pursue its claims administratively would amount to "no review at all." Although plaintiff could have presented a similar argument in its opposition to the Secretary's motion, plaintiff elected to argue that, under *Michigan Academy,* § 405(h) does not bar

§ 1331 jurisdiction over challenges to regulations, a strategy that was not unreasonable; at least one court of appeals had interpreted *Michigan Academy* in this manner before *Illinois Council.* *See Illinois Council,* 529 U.S. at ——, 120 S.Ct. at 1091.

The Court, however, is unpersuaded by plaintiff's argument. Plaintiff has not presented sufficient evidence of "illegal conspirational activity" by the Secretary against chiropractors; it has shown only that the Secretary was late (by more than six years) in submitting the Report to Congress, and that an attorney representing the Secretary in this case wrote a letter that allegedly is inconsistent with a representation in footnote 8 of the Secretary's memorandum in support of her motion to dismiss. If plaintiff is ultimately correct that HHS will not provide a fair and impartial forum for adjudicating its claims, bias during any subsequent administrative proceedings will constitute an appropriate ground for reversing the agency's determination. *See Jonal Corp. v. District of Columbia,* 533 F.2d 1192, 1197 (D.C.Cir.1976) (quoting *NLRB v. Washington Dehydrated Food Co.,* 118 F.2d 980 (9th Cir.1941)).

low an enrollee or an assignee of an enrollee to request review of an organization determination. *See* 42 C.F.R. §§ 422.574, 422.582. An organization determination is a determination by a managed care organization regarding payment for emergency services, payment for other health services believed to be covered by Medicare, or discontinuation of a health service. *Id.* § 422.566(b). As applied, these regulations allow a chiropractor to pursue a claim administratively in the context of an organization determination, but only by accepting assignment of a claim from a Medicare enrollee. In order to receive assignment of a claim, the chiropractor must have furnished the service that is the subject of the claim and must agree "to waive any right to payment from the enrollee for that service." *Id.* § 422.574(b). If the chiropractor does not agree with the organization's subsequent reconsideration of its determination, it may seek review by an administrative law judge ("ALJ"). *See id.* § 422.600(a). Any party disagreeing with the ALJ's decision may appeal the decision to the Department Appeals Board ("DAB"). *Id.* § 422.608. The DAB's review of the ALJ's decision, or its decision not to review the ALJ's decision, produces a final decision subject to judicial review. *Id.* § 422.612(b); 42 U.S.C. § 1395w–22(g).

Although plaintiff does not contest the applicability of these administrative procedures, the Court is not convinced that they necessarily will enable plaintiff or its member chiropractors to raise the claims asserted in Counts II–V of the amended complaint in an administrative proceeding.

The Court's concern centers around the scope of the claims adjudicated under agency procedures. As discussed, a chiropractor may challenge an organization determination upon receiving assignment of a claim from a Medicare enrollee for whom the chiropractor has performed a manual manipulation. Any administrative claim pursued by the chiropractor therefore will involve a dispute over the extent to which the chiropractor's services are covered by Medicare; where applicable, this dispute will encompass any regulations or policies bearing on such coverage. It is unclear whether plaintiff's remaining claims would ever be heard in this context because at least three of those claims would not necessarily be implicated by a claim for coverage of a manual manipulation by a chiropractor. For example, Counts II and III allege that the Secretary's regulations and policies unlawfully allow managed care organizations to provide manual manipulations as a covered Medicare service through non-chiropractors; however, it would be unnecessary to determine whether non-chiropractors may provide manual manipulations under the Medicare program in order to resolve an administrative claim brought by a chiropractor regarding coverage for a manual manipulation performed by that chiropractor.[8] Count V alleges that portions of the monthly capitated amounts that Medicare pays to managed care organizations have been misappropriated, and requests that the Secretary assess the organizations for the amount of the misappropriated funds; the Court has difficulty conceiving how

8. Conceivably, the issue of whether chiropractors should be the exclusive Medicare providers of manual manipulations could arise if a managed care organization denies a claim for coverage of a manual manipulation performed by a chiropractor on the ground that it makes the service of manual manipulations available only through non-chiropractors. Nevertheless, it is doubtful that an administrative claim pursued by a chiropractor would arise in such a context. According to the Secretary's Report, only 22% of surveyed HMOs do not make manual manipulations available through chiropractors. It may be difficult for a chiropractor to bring a claim against such an HMO because 42 C.F.R. § 422.574(b) requires that a chiropractor render a manual manipulation to a Medicare enrollee in order to be eligible for assignment of the enrollee's claim; in this context, § 422.574(b) would require that a member of a managed care organization providing manual manipulations only through non-chiropractors decide to forego Medicare payment for a manual manipulation and seek the non-covered services of a chiropractor, rather than the covered services of another practitioner.

such a claim would ever arise in the context of a disputed claim for coverage of a manual manipulation by a chiropractor.[9]

In sum, although the Secretary has set forth the procedures under which plaintiff's member chiropractors may pursue an administrative claim under the Medicare Act, on the record before it, the Court cannot ascertain whether, as a practical matter, those procedures will lead to review of the remaining claims in plaintiff's amended complaint. Because the Court will not exercise jurisdiction over plaintiff's claims under the Mandamus Act, *see supra* Part C, the outcome of the Secretary's motion to dismiss with respect to Counts II–V turns on the resolution of this issue of administrative reviewability. Accordingly, the Court directs the parties to submit supplemental memoranda addressing whether the adjudicatory procedures specified by the Secretary will enable a chiropractor to raise the claims asserted in Counts II–V in an administrative proceeding, or whether requiring administrative adjudication of plaintiff's claims will lead to the equivalent of "no review at all." To the extent possible, this discussion should also address chiropractors' ability, as a practical matter, to receive assignment of claims from Medicare enrollees, including any difficulties they might encounter in this process.

## C. *Jurisdiction under the Mandamus Act*

Plaintiff also invokes the Court's mandamus jurisdiction. As the Supreme Court has explained, "[t]he common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Ringer,* 466 U.S. at 616, 104 S.Ct. 2013.

The exhaustion requirement precludes mandamus jurisdiction in this case, regardless of whether the Court ultimately concludes that it has § 1331 jurisdiction. First, if the Court exercises § 1331 jurisdiction, plaintiff will have an available remedy under the APA. *See Mt. Emmons Mining Co. v. Babbitt,* 117 F.3d 1167, 1170 (10th Cir.1997) ("The availability of a remedy under the APA technically precludes Mt. Emmons' alternative request for a writ of mandamus. . . ."); *R.T. Vanderbilt Co. v. Babbitt,* 113 F.3d 1061, 1065 (9th Cir.1997) ("mandamus relief and relief under the APA are 'in essence' the same; as a result we elect[ ] to analyze the claim under the APA where there is an adequate remedy under the APA."). Second, if the Court is precluded from exercising jurisdiction under § 1331, plaintiff's members will be able to pursue their remedy administratively because a finding that § 405(h) bars § 1331 jurisdiction would presuppose the availability of administrative review. *See supra* Part II.B. Although the Supreme Court expressly has not decided whether "the second sentence of 42 U.S.C. § 405(h)" means that "mandamus is altogether unavailable to review claims arising under the Medicare Act," *Your Home Visiting Nurse Services, Inc. v. Shalala,* 525 U.S. at 457 n. 3, 119 S.Ct. 930 (1999) (citing *Ringer,* 466 U.S. at 616–17, 104 S.Ct. 2013), it has held that mandamus relief is not appropriate where a party has an available administrative remedy under the Medicare program. *Ringer,* 466 U.S. at 617, 104 S.Ct. 2013; *accord Ganem v. Heckler,* 746 F.2d 844, 850 (D.C.Cir.1984). *See also Women's Equity Action League v. Cavazos,* 906 F.2d 742, 752 (D.C.Cir.1990) ("Mandamus is an extraordinary remedy available only if other relief is inadequate; a determination that an APA action is barred by another remedy therefore demands the further conclusion that mandamus is not available."). Accordingly, even

9. By contrast, the claim alleged in Count IV appears more likely to arise in the context of a claim for coverage of chiropractic services because the requirement of a physician referral would be implicated where an enrollee did not receive such a referral, but still sought the services of a chiropractor.

if § 405(h) precludes § 1331 jurisdiction in this case, the Court will not exercise mandamus jurisdiction.

For the foregoing reasons, it hereby is

ORDERED, that defendant's motion to dismiss is granted with respect to Count I. It hereby further is

ORDERED, that the parties shall submit supplemental memoranda in accordance with Part II.B of the Court's Opinion within three weeks of the date of this Opinion; any replies thereto shall be filed within five weeks of the date of this Opinion.

SO ORDERED.