**AMERICAN CHIROPRACTIC ASSOCIATION, INC.,**
Plaintiff,

v.

**Donna E. SHALALA, Secretary of Health and Human Services,**
Defendant.

No. Civ.A. 98–2762 (SSH).

United States District Court,
District of Columbia.

Jan. 22, 2001.

Thomas R. Daly, Odin, Feldman & Pittleman, Fairfax, VA, for plaintiff.

Marcus Hallsted Christ, Jr., Office of General Counsel, U.S. Department of Health & Human Services, Baltimore, MD, for defendant.

## MEMORANDUM ORDER

STANLEY S. HARRIS, District Judge.

Before the Court are the parties' supplemental memoranda on the administrative reviewability of the remaining claims (Counts II–V) in plaintiff's amended complaint. The Court requested this briefing in light of the Supreme Court's recent decision in *Shalala v. Illinois Council on Long Term Care, Inc.,* 529 U.S. 1, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000), when it partially ruled on the motion to dismiss filed by the Secretary of Health and Human Services (the "Secretary"). *See American Chiropractic Ass'n v. Shalala,* 108 F.Supp.2d 1 (D.D.C.2000).[1] Upon consideration of the parties' supplemental memoranda, the Court grants the Secretary's motion to dismiss with respect to Count IV, but denies it with respect to Counts II, III, and V.

Before discussing the administrative reviewability of plaintiff's claims, the Court briefly addresses an issue which it already has resolved, but which the Secretary raises anew in her supplemental memorandum. The Secretary argues that the Court's exercise of jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331 is precluded by 42 U.S.C. § 405(h) because the claims arise under the Medicare Act. Def.'s Suppl.Mem. at 2–5. *Illinois Council* makes clear, however, that § 405(h)'s bar on § 1331 jurisdiction is not

---

1. In its July 7th Opinion, the Court dismissed Count I. *See American Chiropractic Ass'n,* 108 F.Supp.2d at 3. The Court also notes that, because its Opinion adequately discusses the background of this case, *id.* at 3–4, it will not review that background here.

incorporated into the Medicare Act pursuant to 42 U.S.C. § 1395ii where the "application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Illinois Council,* 120 S.Ct. at 1096–97; *accord Association of Am. Med. Colleges v. United States,* 217 F.3d 770, 779 (9th Cir.2000). This requires an assessment of "whether, as applied generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into complete preclusion of judicial review." *Illinois Council,* 120 S.Ct. at 1098. Although this standard creates a significant obstacle to invoking the Court's § 1331 jurisdiction, it does not erect an insurmountable barrier. As discussed below, requiring administrative review of plaintiff's claims would effectively result in the complete preclusion of review with respect to all but Count IV.[2]

■ At the outset, the Court notes that the analysis of whether requiring administrative review will result in "no review at all" applies to whether a chiropractor or a Medicare enrollee may assert a claim administratively. Even though the Court's request for supplemental briefing referred only to chiropractors insofar as an association of chiropractors is asserting the claims in this lawsuit, enrollees are properly included in the pool of claimants because, under *Illinois Council,* the preclusion-of-review analysis "applie[s] generally to those covered by a particular statutory provision...." 120 S.Ct. at 1098. Inasmuch as enrollees are beneficiaries of the Medicare provisions and regulations at issue in this case, their ability and willingness to assert the claims in Counts II–V must be evaluated.

■ The Court finds that enrollees would only assert the claim in Count IV, which alleges that Medicare HMO/CMP and M + C organizations (collectively "managed care organizations") should not be allowed to require a referral by a non-chiropractor before an enrollee may receive a manual manipulation of the spine to correct a subluxation (hereinafter "manual manipulation"). As the Secretary states in her supplemental memorandum, an enrollee can request a manual manipulation by a chiropractor and, if coverage is denied because the enrollee cannot or did not receive a physician referral for this treatment, the enrollee may challenge the adverse organization determination pursuant to normal administrative procedures— either before or after seeking the outside services of a chiropractor—and ultimately may seek judicial review under 42 U.S.C. § 405(g). *See American Chiropractic Ass'n,* 108 F.Supp.2d at 6 (discussing procedures for challenging organization determinations); 42 C.F.R. §§ 422.566(b)(2) &

---

2. The Secretary also notes—or at least implies—her disagreement with the Court's conclusion that plaintiff has standing to assert Count V. In a footnote, the Secretary states: The standing to bring Count V remains unclear. ACA does not purport to bring an action on behalf of the government under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729. Nor is ACA requesting that the payments to the M + COs [Medicare + Choice organizations] be returned to it as individualized damages. Rather, it is requesting, on its own behalf, that the payments be returned to the government. Therefore, it is unclear how this Count, which suggests an overpayment of federal funds to M + COs, is properly before this Court under § 1331, nor how ACA has standing to bring it.

Def.'s Suppl.Mem. at 5 n. 4. In addition to challenging plaintiff's standing to assert Count V, the Secretary's arguments appear to question whether Count V presents a viable cause of action. *See also id.* at 7 ("Count V ... is not so much a cause of action as a requested remedy for the Secretary's allegedly inappropriate payments to M + COs."). Nevertheless, the Secretary omitted these arguments from the standing discussion in her motion to dismiss, and did not present them in the context of a motion to dismiss for failure to state a claim. Because the Secretary did not raise these arguments in her original motion, and because they fall outside the scope of the Court's order for supplemental briefing, the Court will not address their merits.

(3). A challenge to such an organization determination would squarely implicate the validity of the physician referral requirement. Because an administrative remedy exists under the Medicare program for the claim alleged in Count IV, the bar in § 405(h) applies and deprives the Court of § 1331 jurisdiction.

■ By contrast, administrative review of the claims alleged in Counts II, III, and V would not be available through enrollees. At bottom, those claims challenge the lawfulness of allowing managed care organizations to use non-chiropractors to perform manual manipulations on the ground that chiropractors should be the exclusive Medicare providers of this treatment.[3] An enrollee, however, would have no incentive to pursue such a claim when challenging an organization determination denying coverage for chiropractic services because the enrollee's interest would lie only in ensuring that the chiropractic treatment sought or received is covered by Medicare. Thus, depending on the basis for the adverse organization determination, the enrollee might claim that the treatment was medically necessary or that the Medicare statute requires managed care organizations to make manual manipulations available through chiropractors; that non-chiropractors may also perform manual manipulations, however, would be of little concern to the enrollee as long as Medicare provides coverage for manual manipulations performed by a chiropractor. Because enrollees have no incentive to pursue a claim asserting that chiropractors should be the exclusive Medicare providers of manual manipulations, they do not provide a vehicle for presenting Counts II, III, or V for administrative and, ultimately, judicial review.

Chiropractors, of course, have an interest in pursuing such a claim. The Secretary sets forth two scenarios in which chiropractors could present the claims alleged in Counts II, III, and V to the agency pursuant to normal review procedures. First, the Secretary contends that a chiropractor may become a party to an organization determination by becoming the authorized representative of a Medicare enrollee under 42 C.F.R. §§ 422.574(a), 404.1705(b). *See* Def.'s Suppl.Mem. at 9. As plaintiff correctly argues, however, serving as such a representative would obligate the chiropractor to represent only the enrollee's interests and to act as a fiduciary and agent of the enrollee. *See* 42 C.F.R. §§ 404.1703, 404.1740(a)(1). The chiropractor's duties as a representative would therefore prohibit the chiropractor from advocating his or her own interests. As discussed above, an enrollee has no interest in contesting whether non-chiropractors may perform manual manipulations under the Medicare program when pursuing a claim for treatment by a chiropractor. Because the interests of an enrollee and a chiropractor are not co-extensive in this regard, a chiropractor could not pursue the remaining claims alleged in plaintiff's amended complaint while serving as a representative of an enrollee.

As she did in her original motion to dismiss, the Secretary also argues that a chiropractor may become a party to an organization determination by becoming an assignee of an enrollee's claim for benefits. *See* 42 C.F.R. § 422.574(b). To receive assignment of a claim, the chiroprac-

---

**3.** Count V alleges that managed care organizations have "misspent, diverted, or otherwise misappropriated" the predetermined payments they receive from Medicare for manual manipulations. Am.Compl. ¶ 96. The basis of the alleged misappropriation appears to be (at least in part) the failure of managed care organization to use exclusively chiropractors as Medicare providers of manual manipulations. *See id.* ¶ 97 (requesting that the Department of Health and Human Services and the Health Care Financing Administration be required either to assess the organizations for the "misappropriation, default, or diversion," or to "withhold the past misappropriated amount from future payments," and to designate the sum assessed or withheld "solely for the chiropractic service" of manual manipulations).

tor must have furnished the service that is the subject of the claim and must "agree to waive any right to payment from the enrollee for that service." *Id.* The Secretary has not satisfied the Court that this process will lead to review of plaintiff's remaining claims.

When a chiropractor receives assignment of a claim from an enrollee who has authorization to seek treatment from a chiropractor (*i.e.*, the enrollee received a physician referral), plaintiff correctly notes that generally there will not be an adverse determination of a claim for the chiropractor to challenge. *See* Pl.'s Suppl.Mem. at 3. To the extent there is an adverse determination, it will not implicate the issue of whether chiropractors are eligible providers of manual manipulations—much less, whether they should be the exclusive providers—because the enrollee will have received authorization to seek treatment from a chiropractor. Thus, the chiropractor will have no avenue for challenging the rule permitting managed care organizations to use non-chiropractors to provide manual manipulations.

█ Although a chiropractor hypothetically could receive assignment of a claim from an enrollee who seeks unauthorized treatment, such a scenario likely would not arise and, if it did, would not lead to review of the core contention underlying plaintiff's remaining claims. First, most managed care organizations make manual manipulations available through chiropractors; plaintiff cites a study by the Office of the Inspector General, Department of Health and Human Services, indicating that only 13 of 244(5%) surveyed Medicare organizations do not use chiropractors to perform manual manipulations. Pl.'s Suppl.Mem., Ex. A at 9–10. Because most organizations use chiropractors to provide manual manipulations, a request for chiropractic treatment made by an enrollee participating in such an organization generally will be granted where a manual manipulation is medically necessary.[4] Second, an enrollee's participating in a managed care organization that makes manual manipulations available only through non-chiropractors likely would not seek a manual manipulation from a chiropractor because doing so would require the enrollee to forego Medicare coverage for this treatment where it is otherwise available if a non-chiropractor performs the treatment. Although the enrollee ultimately would not bear any financial risk for the unauthorized treatment because the chiropractor must waive any financial claim against the enrollee under the assignment process, the enrollee would not necessarily be aware of this waiver requirement before visiting the chiropractor.[5] Given an enrollee's financial incentive to seek treatment from a non-chiropractor, chiropractors would never reach the point where they could request assignment of a claim from an enrollee.

Finally, even assuming that an enrollee seeks the non-covered services of a chiropractor and agrees to assign his claim to the chiropractor, the assigned claim would not implicate the issue at the heart of plaintiff's remaining claims because wheth-

---

4. Where a manual manipulation is not medically necessary, but an enrollee receives this unauthorized treatment from a chiropractor, the issue implicated by the claim assigned to the chiropractor would not focus on the class of eligible Medicare providers of manual manipulations, but rather would focus on the medical necessity of a manual manipulation in that instance.

5. The Court agrees with the Secretary that simply because an enrollee or a chiropractor must assume some financial risk to invoke the administrative process does not remove § 405(h)'s jurisdictional bar. *See Illinois Council,* 120 S.Ct. at 1098–99. Thus, in this context, a chiropractor would be required to assume the financial risk of an unpaid assigned claim if it would lead to administrative review of the claim. The problem, however, is that enrollees unwittingly will opt .for the covered services of a non-chiropractor instead of the non-covered services of a chiropractor, and thereby prevent chiropractors from reaching the point where they are able to assume this financial risk.

179

er chiropractors are eligible Medicare pro-
viders of manual manipulations and wheth-
er they should be the exclusive providers
of this treatment present entirely distinct
inquires. The Secretary has not explained
how the latter issue would arise in, or be
resolved by, a determination on an as-
signed claim for coverage. Because an
adverse organization determination would
never rely on the rule permitting non-
chiropractors to perform manual manipu-
lations under the Medicare program, chiro-
practors would not be able to challenge
this rule in court pursuant to § 405(g).
*See Illinois Council*, 120 S.Ct. at 1099
(noting that, even if regulations insulate
certain decisions from agency review, liti-
gants "remain free ..., after following the
special review route that the statutes pre-
scribe, to contest in court the lawfulness of
any regulation or statute *upon which an
agency determination depends.*" (emphasis
added)). The claim assignment process is
simply ill-suited for bringing this challenge
before an agency or court for review.

In sum, an enrollee's lack of incentive to
challenge the eligibility of non-chiroprac-
tors to provide manual manipulations, a
chiropractor's inability to raise this issue
while serving as a representative of the
enrollee, and the obstacles presented by
the claim assignment process in this con-
text persuade the Court that, as applied
generally to those covered by the Medi-
care provisions and regulations at issue in
this case, requiring administrative adjudi-
cation of plaintiff's remaining claims, as a
practical matter, will lead to "no review at
all." Accordingly, it hereby is

ORDERED, that defendant's motion to
dismiss is granted with respect to Count
IV of plaintiff's amended complaint, but
denied with respect to Counts II, III, and
V of plaintiff's amended complaint. It
hereby further is

ORDERED, that in accordance with the
Court's Order dated September 20, 1999,
the parties shall meet and confer pursuant
to LCvR 16.3(a) within 15 days of the date
of this Memorandum Order. The parties

shall file a report pursuant to LCvR
16.3(d) ten days thereafter.

SO ORDERED.