# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 14, 2005      Decided December 13, 2005

No. 04-5411

AMERICAN CHIROPRACTIC ASSOCIATION, INC.,
APPELLANT

v.

MICHAEL O. LEAVITT, SECRETARY OF THE DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(98cv02762)

———

*George P. McAndrews* argued the cause for appellant. With him on the briefs were *Peter J. McAndrews*, *Gerald C. Willis, Jr.*, *Joseph F. Harding*, *Matthew A. Anderson*, and *Thomas R. Daly*.

*Jeffrey Clair*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, *Kenneth L. Wainstein*, U.S. Attorney, and *Barbara C. Biddle*, Attorney.

Before: SENTELLE and RANDOLPH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: The first issue in this appeal from the district court's order granting summary judgment in favor of the Secretary of Health and Human Services is whether the American Chiropractic Association has prudential standing to pursue its claims under the Medicare Act. We hold that it does. The second issue is whether the district court had jurisdiction over each of the Association's remaining claims. We hold that it did not.

I.

The Medicare program subsidizes medical insurance for elderly and disabled persons. 42 U.S.C. §§ 1395c, 1395j. Enrollees in the program may select physicians of their choice, with Medicare paying costs that are covered. *Id.* § 1395k. Or they may obtain medical services from managed-care providers such as health maintenance organizations (HMOs). *Id.* §§ 1395w-21 to 1395w-28. The focus of the case is on these organizations and on a particular type of "physicians' service[]," *id.* § 1395x(s)(1) – namely, manual manipulation of the spine in order to correct a spinal misalignment or "subluxation." Section 1395x(r) of the Act defines "physician" to include "a doctor of medicine or osteopathy legally authorized to practice medicine and surgery by the State," or "a chiropractor who is licensed as such by the State . . . and who meets uniform minimum standards promulgated by the Secretary, but only . . . with respect to treatment by means of manual manipulation of the spine (to correct a subluxation) which he is legally authorized to perform by the State." *Id.* § 1395x(r).

The Association, invoking general federal question jurisdiction under 28 U.S.C. § 1331, filed a complaint in district court alleging that the Secretary had misinterpreted § 1395x(r)

when he determined that not only chiropractors, but also medical doctors and osteopaths could provide covered services when they manually manipulated an enrollee's spine to correct the condition mentioned above (Count 3). According to the Association, under the Act this service should be covered only if chiropractors perform it.[1] The complaint also alleged, in Count 4, that the Secretary illegally permitted organizations such as HMOs to require that enrollees obtain a referral from a medical doctor, an osteopath, or other non-chiropractor in order to obtain coverage for chiropractic correction of a subluxation.[2]

The district court rejected the Secretary's argument that the Association lacked prudential standing, *Am. Chiropractic Ass'n v. Shalala*, 108 F. Supp. 2d 1, 7 n.5 (D.D.C. 2000), but agreed that it lacked jurisdiction over Count 4, *Am. Chiropractic Ass'n v. Shalala*, 131 F. Supp. 2d 174, 175-77 (D.D.C. 2001). As to

---

[1] The Association's complaint is aimed at the Medicare HMO system. In 1999, the Secretary submitted a report to Congress. That report stated that "[n]one of the plans that utilized chiropractors included them on the staff, group, or panel." It also noted that "[o]f the HMOs [and other organizations] sample[d]" by the Secretary, "the substantial majority, 78 percent, utilized chiropractors to provide the service of manual manipulation of the spine." These plans also used other practitioners, such as medical doctors and osteopaths. The remaining plans "did not utilize chiropractors to provide the service of manual manipulation of the spine." Donna E. Shalala, Department of Health and Human Services, Chiropractic Services in Medicare Managed Care ch. 4 (Apr. 1999) (report to Congress).

[2] The Association also sought an order compelling the Secretary to calculate the amount of funds he misspent under these allegedly erroneous policies and to divert that amount toward the use of chiropractors (Count 5). Like the district court, we consider Count 5 an extension of, or remedy for, the violations alleged in Counts 3 and 4. If those fail, so does Count 5.

Count 3, the court held that it had jurisdiction, *id.* at 177-79, and granted summary judgment in the Secretary's favor, concluding that chiropractors were not the only "physicians" who could perform covered services dealing with subluxations.

## II.

With respect to standing, the Secretary's objection is that the Association's members are not "arguably within the zone of interests to be protected or regulated by the statute . . . in question." *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 488 (1998) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)). The interests of the Association are outside this category, according to the Secretary, because the Act was not "intended to protect the competitive position of chiropractors or to limit the markets available to licensed medical doctors." Br. for Appellee 27.

If the Secretary's version of what Congress intended is correct, the Association might lose on the merits. But the zone-of-interest test, which is not "especially demanding," does not require an "indication of congressional purpose to benefit the would-be plaintiff." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399-400 (1987) (citing *Inv. Co. Inst. v. Camp*, 401 U.S. 617 (1971)). The question at this stage is whether Congress meant to exclude this class of plaintiffs from those who may sue to enforce their view of the Act, right or wrong. *Id.* at 399.

It is of no moment that the Association, through this lawsuit, may be seeking to promote the financial interests of its members. *See Nat'l Credit Union*, 522 U.S. at 499; *Amgen, Inc. v. Smith*, 357 F.3d 103, 109 (D.C. Cir. 2004). The Medicare program makes quality health care available to the elderly and the disabled by reimbursing those who provide care, including

physicians and chiropractors. *See Fischer v. United States*, 529 U.S. 667, 680 (2000). If the Secretary had simply refused to permit reimbursement to any chiropractor despite the language of § 1395x(r), no one would doubt the Association's prudential standing in a suit contesting the Secretary's action. The Association's claim here – that the Secretary has effectively cut off its members from potential patients who are members of HMOs and similar organizations – is narrower. But this scarcely alters the analysis. In both situations the interests of enrollees and the interests of chiropractors converge: the chiropractor provides the service, the enrollee receives it, and Medicare provides reimbursement. This is more than enough to satisfy the less-than-demanding zone-of-interest test. *See Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 871 (D.C. Cir. 2001).

III.

The jurisdictional question is more complicated. "No action against the United States, the [Secretary of Health and Human Services], or any officer or employee thereof shall be brought under [28 U.S.C. §] 1331 . . . to recover on any claim arising under" the Medicare Act. 42 U.S.C. §§ 405(h), 1395ii. Judicial review may be had only after the claim has been presented to the Secretary and administrative remedies have been exhausted. *See* 42 U.S.C. §§ 405(g), (h), 1395w-22(g)(5); *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 8-9 (2000); *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 763-64 (1975). This bar against § 1331 actions applies to all claims that have their "standing and substantive basis" in the Medicare Act. *Ill. Council*, 529 U.S. at 11, 17 (quoting *Salfi*, 422 U.S. at 761); *see also Ringer*, 466 U.S. at 615.

Although § 1395ii, which incorporates § 405(h), would appear to preclude all Medicare suits founded on general federal question jurisdiction, the Supreme Court has recognized an exception: if the claimant can obtain judicial review only in a federal question suit, § 1395ii will not bar the suit. *See Ill. Council*, 529 U.S. at 10-13, 17-20. The exception applies not only when administrative regulations foreclose judicial review, but also when roadblocks practically cut off any avenue to federal court. As to the latter, it is not enough that claimants would encounter "potentially isolated instances of the inconveniences sometimes associated with the postponement of judicial review," or that their claims might not receive adequate administrative attention. *Id.* at 23. The difficulties must be severe enough to render judicial review unavailable as a practical matter. *Id.* at 22-23.

The Association denies that its claims in this case could even become the subject of administrative proceedings. The Secretary argues the opposite. The question therefore is whether the Association could get its claims heard administratively and whether it could receive judicial review after administrative channeling.

How the Association might have its claim heard in the administrative proceedings leading to judicial review is easy to see with respect to Count 4 of the complaint – the count charging that the Secretary illegally permitted organizations such as HMOs to require, as a condition of coverage, that the enrollee obtain a referral from a medical doctor or an osteopath for chiropractic correction of a subluxation. To have such a claim heard, an enrollee could obtain the services of a chiropractor without first obtaining a referral. After the HMO refuses coverage because of the absence of a referral, the enrollee could file a grievance with the HMO, claiming that the referral requirement was illegal. *See* 42 U.S.C. § 1395w-

22(g)(1)(A); 42 C.F.R. §§ 422.562(a)(1), .566(a). This would trigger the administrative process, at the end of which is judicial review of the Secretary's final decision. *See* 42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.612(a), (c). The chiropractor who provided the service could also mount an administrative challenge by "waiv[ing] any right to payment from the enrollee" and becoming the enrollee's assignee. 42 C.F.R. § 422.574(b). There are minimum amounts in controversy – $100 for a hearing before an administrative law judge, $1000 for judicial review, *see* 42 U.S.C. § 1395w-22(g)(5) – but the Secretary states without contradiction that claims may be aggregated, *see* 42 C.F.R. §§ 405.817(a)(2), 422.600(b). The Association's objection that it could not itself become a party to the administrative proceedings is an objection the Supreme Court rejected in *Illinois Council*, 529 U.S. at 24. An association "speaks only on behalf of its member[s], and thus has standing only because of the injury those members allegedly suffer." *Id.*; *see Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). We therefore agree with the district court that Count 4 of the Association's complaint is jurisdictionally barred.

Count 3 is more difficult. This alleges that the Secretary misinterpreted § 1395x(r) to mean that not only chiropractors, but also medical doctors and osteopaths could provide covered services when they manually manipulated an enrollee's spine to correct the condition mentioned above. Suppose an HMO permitted enrollees to receive this service from a medical doctor or an osteopath or a chiropractor. Suppose also that a participating chiropractor became a party to an administrative proceeding in the manner just outlined. There would be a dispute about the referral requirement, but that goes to Count 4. Count 3 deals with who may provide the service. By hypothesis, a chiropractor would have provided the service, and everyone agrees that § 1395x(r) covers chiropractors. We can think of no reason why an administrative decision-maker would reach out

to decide whether medical doctors and osteopaths may also do so. The possibility of judicial review at the end of the proceedings would be worthless. No court would adjudicate a claim that was not in controversy.

It would be another matter entirely if the HMO provided that only medical doctors and osteopaths could furnish the service at issue here. According to the Secretary's report to Congress, twenty-two percent of HMOs have such a restriction. *See* note 1 *supra*. An enrollee in such an HMO could enlist the services of a chiropractor and, as we discussed with respect to Count 4, the chiropractor could become the enrollee's assignee. (As with Count 4, amounts in controversy may be aggregated to obtain judicial review.) The chiropractor could then file an administrative claim, arguing that the HMO must reimburse him even though the HMO allows reimbursement only for medical doctors and osteopaths. At this point the HMO would be expected to defend on the ground that a regulation entitles it to restrict the type of practitioners who may provide a service. The regulation states that "[i]f more than one type of practitioner is *qualified* to furnish a particular service, the HMO . . . may select the type of practitioner to be used." 42 C.F.R. § 417.416(b)(3) (emphasis added). The HMO's invocation of this provision would squarely present the question whether medical doctors and osteopaths, as well as chiropractors, are "qualified to furnish" the service of manual manipulation of the spine to correct a subluxation. It follows that chiropractors could receive an administrative decision on the issue presented in Count 3 and that under *Illinois Council* the district court had no jurisdiction to decide that claim.

We therefore affirm the district court's judgment with respect to Count 4. With respect to Count 3, we reverse the judgment on the ground that the court lacked jurisdiction.

*So ordered.*